IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____

JENNIFER DENISE PATTERSON,           )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        13-cv-1040-JDB-tmp
                                     )
CAROLYN W. COLVIN,                   )
ACTING COMMISSIONER OF SOCIAL        )
SECURITY,                            )
                                     )
        Defendant.                   )
                                     )

_____

### REPORT AND RECOMMENDATION
_____

Before the court by order of reference dated October 17, 2016, (ECF No. 16) is plaintiff Jennifer Patterson's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq*. For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

### I.  PROPOSED FINDINGS OF FACT

On September 12, 2011, Patterson applied for disability insurance benefits under Title II of the Act and supplemental security income under Title XVI of the Act. (R. 131, 138.) In both applications Patterson alleged a disability onset date of

March 1, 2011 due to diverticulitis, scoliosis, lupes, anxiety, depression, diabetes, neuropathy, and acid reflux. (R. 194.) Patterson's applications were denied initially, and upon reconsideration by the Social Security Administration ("SSA"). (R. 66, 75-76.) At Patterson's request, a hearing was held before an Administrative Law Judge ("ALJ") on August 7, 2012. (R. at 35, 80-81.) On August 22, 2012, the ALJ issued a decision denying Patterson's request for benefits after finding that Taylor was not disabled because she retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy. (R. 9-34.) On December 6, 2012, the SSA's Appeals Council denied Taylor's request for review. (R. 1-3.) Therefore, the ALJ's decision became the final decision of the Commissioner. (Id.)

On February 1, 2013, Patterson filed the instant action. (ECF No. 1.) Patterson argues that: (1) the ALJ erred by not finding that Patterson suffered from the severe impairment of rheumatoid arthritis; (2) the ALJ improperly weighed the opinion of Patterson's treating physician, Dr. Earl Stewart; (3) the ALJ failed to assess properly the credibility of Patterson's statements about her symptoms; (4) the ALJ failed to perform a function-by-function RFC assessment as required by SSR 96-8p; (5) the ALJ failed to consider the functional effects of Patterson's obesity; and (6) the ALJ failed to properly consider Patterson's use of a cane.

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir.

1990) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." <u>Barker v. Shalala</u>, 40 F.3d 789, 794 (6th Cir. 1994) (quoting <u>Smith v. Sec'y of Health & Human Servs.</u>, 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. <u>Ulman v. Comm'r of Soc. Sec.</u>, 693 F.3d 709, 713 (6th Cir. 2012) (citing <u>Bass v. McMahon</u>, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 528 (6th Cir. 1997); <u>Crum v. Sullivan</u>, 921 F.2d 642, 644 (6th Cir. 1990); <u>Kiner v. Colvin</u>, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a
> disability only if his physical or mental impairment or
> impairments are of such severity that he is not only

-4-

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R.

§§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii).  In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled.  On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work.  See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e).  If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered.  Id.  But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy.  See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2).  Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.  20 C.F.R. § 404.1520(a)(4).

## C.  The ALJ Did Not Err at Step Two

Patterson contends that the ALJ erred by not finding that Patterson suffered from the severe impairment of rheumatoid arthritis at step two of the disability analysis.  A severe impairment is "any impairment or combination of impairments which

significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) & 416.920(c). The severity determination is "a *de minimis* hurdle in the disability determination process," and "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988)).

The ALJ found in Patterson's favor at step two by concluding Patterson suffered from the following severe impairments: diverticulitis, irritable bowel syndrome (IBS), generalized abdominal pain, obesity, lumbago, scoliosis, systemic lupus erythematosus, alcohol induced mood disorder, anxiety, depression, diabetes mellitus type II with neuropathy, and fibromyalgia. The ALJ was required to consider all of Patterson's impairments, both severe and non-severe, at all of the remaining steps of the disability analysis. See 20 C.F.R. § 404.1545 (stating that when determining a claimant's RFC, the ALJ must "consider all of [her] medically determinable impairments of which [the ALJ is] aware, including [] medically determinable impairments that are not severe"). As a result, the fact that the ALJ did not find that Patterson suffered from the severe impairment of rheumatoid arthritis at step 2 is "legally irrelevant." Anthony, 266 F. App'x at 457 (citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)).

The ALJ did not discuss rheumatoid arthritis at any step of the disability analysis. Patterson asserts that "rheumatoid arthritis causes additional limitations which could prevent the Plaintiff from performing at the RFC assigned in the decision." (ECF No. 12-1 at 10.) However, there is not sufficient evidence in the record to establish that Patterson suffers from rheumatoid arthritis, or, alternatively, that rheumatoid arthritis would affect Patterson's RFC. In her application for Social Security benefits, Patterson did not include rheumatoid arthritis, on the list of conditions which limit her ability to work. Although the ALJ inquired about rheumatoid arthritis at the hearing, Patterson did not address it in her testimony. While references to arthritis appear in some of Patterson's treatment notes, those references appear in the review of Patterson's health history, not as a diagnosis. Finally, none of the medical opinions addressing Patterson's physical limitations diagnose her with rheumatoid arthritis or take rheumatoid arthritis into account. Accordingly, the ALJ did not err by not discussing rheumatoid arthritis in the disability analysis.

**C.  The ALJ Properly Weighed the Opinion of Patterson's Treating Physician**

Patterson contends that the ALJ erred in weighing the opinion of her treating opinion, Dr. Earl Stewart. In determining a claimant's RFC, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating,

consultative, and examining physicians' opinions." <u>Eslinger v.</u>
<u>Comm'r of Soc. Sec.</u>, 476 F. App'x 618, 621 (6th Cir. 2012) (citing
20 C.F.R. § 404.1545(a)(3)). The SSA has established a
"presumptive sliding scale of deference to be given to various
types of opinions." <u>Norris v. Comm'r of Soc. Sec.</u>, 461 F. App'x
433, 439 (6th Cir. 2012) "A treating source, accorded the most
deference by the SSA, has not only examined the claimant but also
has an 'ongoing treatment relationship' with her consistent with
accepted medical practice." <u>Smith v. Comm'r of Soc. Sec.</u>, 482 F.3d
873, 875 (6th Cir. 2007) (citing 20 C.F.R. §§ 404.1502). The SSA
gives the most deference to opinions from a claimant's treating
sources because treating sources "are likely to be medical
professionals most able to provide a detailed, longitudinal picture
of [the claimant's] medical impairment(s)." <u>Id.</u> (citing 20 C.F.R.
§ 404.1527(c)(2)) (alterations in original). "A nontreating
source, who physically examines the patient "but does not have, or
did not have an ongoing treatment relationship with" the patient,
falls next along the continuum. A nonexamining source, who
provides an opinion based solely on review of the patient's
existing medical records, is afforded the least deference."
<u>Norris</u>, 461 F. App'x at 439 (citing <u>Smith</u>, 482 F.3d at 875).

The ALJ must assign controlling weight to a treating source
opinion on the issue of the nature and severity of a claimant's
impairments if the opinion is "well-supported by medically
acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the claimant's] record." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). However, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." Morr v. Comm'r of Soc. Sec., 616 F. App'x 210, 211 (6th Cir. 2015) (citing Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993)); see also SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996) ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.").

If the ALJ does not give controlling weight to a treating source opinion, he must give "good reasons" for doing so. See 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). The ALJ must consider "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(c)(2)); see also SSR 96-2p, 1996 WL 374188, at *5 (stating that the ALJ must give "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

At the hearing, Patterson testified that Dr. Earl Stewart was her primary doctor, and that she saw him monthly. On August 6, 2012, Dr. Stewart submitted a medical opinion regarding Patterson's ability to do physical work-related activities. (R. 767-78.) Dr. Stewart opined that Patterson has the following physical limitations: lifting a maximum of twenty pounds occasionally; lifting ten pounds frequently; standing and walking less than two hours in an eight-hour day; sitting less than two hours in an eight-hour day; needing to change between sitting and standing every thirty minutes; needing to walk around every thirty minutes for thirty minutes; needing to be able to shift at will between sitting or standing/walking; never twisting, stooping, crouching climbing stairs and climbing ladders; and avoiding concentrated exposure to extreme cold. He also found that Patterson is limited in her ability to reach, push, and pull. Dr. Stewart stated that these physical limitations are supported by medical findings of "fibromyalgia and chronic back pain" as well as "point tenderness thoracic and lumbar spine." (R. 768.) He anticipated that Patterson's impairments would cause her to miss work more than four days per month.

The ALJ determined that although Dr. Stewart is a treating source, his opinion is entitled "to very little weight." (R. 26.)

The ALJ gave several reasons for the weight she assigned to Dr. Stewart's opinion.  First, she found Dr. Stewart's opinion to be inconsistent with his own treatment records as well as Patterson's testimony that "she is raising three children independently" and "performs household chores and drives occasionally."  (R. 26.) Patterson contends that the ALJ mischaracterized her daily activities.  She specifically points to the September 30, 2011 SSA function report in which she wrote that she "hurts all the time," has help in caring for her children, seldomly does household chores, has a hard time getting out of the tub, and has family and friends help her wash and style her hair.  (R. 204-11; ECF No. 12-1 at 8.)  The ALJ's characterization of Patterson's daily activities may not be the only possible characterization, but it is not unreasonable.  Patterson testified at the hearing that she is the "primary parent" for her three children and takes care of them with daily assistance from her mother, that she does laundry and sometimes sweeps, and is able to drive when necessary.  (R. 40, 45, 46.)  While Patterson's daily activities standing alone may not have justified discounting Dr. Stewart's opinion, the ALJ properly considered them in determining whether Dr. Stewart's opinion is inconsistent with substantial evidence in the record.

The ALJ also found Dr. Stewart's opinion to be inconsistent with x-rays of Patterson's lumbar and thoracic spine taken in February 2012 as well as a March 2012 MRI of Patterson's lumbar spine.  The x-rays were interpreted by Dr. Thomas Markel as showing

normal alignment, well-maintained disc spaces, and "no fracture, subluxation, or significant degenerative change." (R. 752.) Dr. Markel's impression was that the x-rays showed "no significant abnormality." (Id.) The MRI findings, written by Dr. Tony Ghodadra, indicated that "the conus medullaris and the cauda equina are normal," with no visible "intradural extramedullary mass or [] epidural fluid collection" and "preserved endplates and normal paravertebral soft tissues." (R. 699.) Dr. Ghodadra's impression was "[u]nremarkable MRI of the lumbar spine. No focal disc herniation is noted." (R. 700.) Despite Patterson's arguments that the ALJ "cherry-picked" the record for evidence cutting against Dr. Stewart's opinion, the x-rays and MRI are "medically acceptable clinical and laboratory diagnostic techniques" that support the ALJ's conclusion that Dr. Stewart's opinion is not sufficiently "supported by clinical findings" to be entitled to controlling weight. See 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2); Morr, 616 F. App'x at 211.

In weighing Dr. Stewart's opinion, the ALJ also considered the opinion submitted by Dr. Gary McBride following a consultative examination of Patterson on November 17, 2011. In Dr. McBride's examination notes, he found Patterson's back to be "[s]ymmetric with no bony abnormalities palpated" and "[n]o spinal tenderness or spasms," that Patterson's "strength was 5/5 in all major muscle groups," and noted "[n]o tenderness, redness, swelling, spasm, joint enlargement, or muscle wasting in any joint examined." (R.

380-81.)  Dr. McBride also found Patterson to have a normal range of motion in her spine, shoulders, elbows, wrists, hips, knees, and ankles.

Based on his examination, Dr. McBride found that, although Patterson did suffer from lower back pain and generalized myalgias, in an eight-hour day, Patterson could: lift and carry up to twenty pounds frequently; sit, stand, and walk frequently with regular breaks; and reach, stoop, kneel, and climb stairs occasionally with regular breaks.  (R. 383-84.)  The ALJ reasonably found Dr. McBride's opinion to be well-supported by his examination findings. This medical opinion, together with the objective medical evidence and nonmedical evidence, constitutes substantial evidence in support of the ALJ's determination that Dr. Stewart's opinion is inconsistent with substantial evidence in the record.[1]

Having determined that Dr. Stewart's opinion was not entitled to controlling weight, the ALJ adequately discussed the weight she assigned it based on the factors listed in §§ 1527(c)(2) and 416.927(c)(2).  The ALJ noted Patterson's testimony that she saw Dr. Stewart once a month for eighteen months, but also that Dr.

_____

[1]Patterson also argues that the ALJ incorrectly interpreted Dr. McBride's medical assessment by equating "frequently" with "two-and a half to five hours per day."  This argument is without merit. Dr. McBride's assessment itself defines "frequently" as meaning "two-and-a-half to five hours per day."  This definition is consistent with the SSA's definition of "frequent," and with the definition used in Dr. Stewart's opinion.  See SSR 83-10, 1983 WL 31251, at *6 (January 1, 1983) ("Frequent means occurring from one-third to two-thirds of the time.").

Stewart was a general practitioner rather than a specialist. As noted above, the ALJ adequately discussed the consistency of Dr. Stewart's opinion in relation to the totality of evidence in the record. As to supportability, the ALJ noted that Dr. Stewart's findings "are not consistent with his own treatment records." (R. 26.) Accordingly, the ALJ properly explained the weight she assigned to Dr. Stewart's opinion. See Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC.").

**D. The ALJ Properly Evaluated Patterson's Statements About the Severity and Nature of Her Symptoms**

Patterson contends that the ALJ improperly evaluated the credibility of her statements about her symptoms. While the ALJ must consider all of a claimant's symptoms, including pain, an individual's statements about her symptoms cannot establish that she is disabled unless the individual is found to have a medically determinable impairment which can reasonably be expected to produce the symptoms.[2] 20 C.F.R. §§ 404.1529(a) & 416.929(a). "If the ALJ finds that a claimant has a medically determinable impairment [] that could reasonably be expected to produce [his or her] symptoms . . . [the ALJ] must then evaluate the intensity and persistence of [those] symptoms . . . [to] determine how [the] symptoms limit [the

---

[2]A symptom is an individual's own description of her physical or mental impairment. 20 C.F.R. §§ 404.1528 & 416.928.

claimant's] capacity for work." Keeton v. Comm'r of Soc. Sec., 583 F. App'x 515, 531–32 (6th Cir. 2014) (alterations in original). The ALJ must consider all relevant evidence, including objective medical evidence, the individual's statements, and "other evidence such as (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4)'[t]he type, dosage, effectiveness, and side effects of any medication;' (5) forms of treatment other than medication that the claimant receives to relieve his or her symptoms; and (6) other measures used to relieve the pain." Id. at 532 (citing 20 C.F.R. §§ 404.1529(a) & 416.929(a)).

An individual's symptoms, including pain, "will be determined to diminish [her] capacity for basic work activities to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." §§ 404.1529(c)(4) & 416.929(c)(4).

Social Security Ruling 96-7p provides that:

whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual,

and any other relevant evidence in the case record. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). SSR 96-7p was in effect at the time of the ALJ's decision, and at the time when the ALJ's decision became the final decision of the Commissioner. However, on March 16, 2016, the SSA issued SSR 16-3p, which supersedes and rescinds SSR 96-7p.[3] SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The SSA's stated purpose for issuing SSR 16-3p was eliminating the term "credibility" from its sub-regulatory policy and to "clarify that subjective symptom evaluation is not an examination of an individual's character." Id. at *1. Furthermore, the regulations governing the SSA's process for evaluating symptoms do not use the term credibility. Id.; see 20 C.F.R. §§ 404.1529 & 416.929.

Instead of determining the credibility of an individual's statements about her symptoms, SSR 16-3p instructs the ALJ to "consider an individual's statements about the intensity persistence, and limiting effects of symptoms, and . . . evaluate whether the statements are consistent with the objective medical evidence and the other evidence." SSR 16-3p, 2016 WL 1119029 at *4. If:

> an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, [the ALJ] will determine that the individual's symptoms are more likely to reduce his

---

[3]On March 24, 2016, the SSA changed the effective date of SSR 16-3p to March 28, 2016. See 2016 WL 1237954.

> or her capacities to perform work-related activities . .
> . . In contrast, if an individual's statements about the
> intensity, persistence, and limiting effects of symptoms
> are inconsistent with the objective medical evidence and
> the other evidence, [the ALJ] will determine that the
> individual's symptoms are less likely to reduce his or
> her capacities to perform work-related activities.

Id. at *7.

Because the briefing in this case was completed before SSR 16-3p was issued, the parties understandably do not raise the issue of whether SSR 16-3p should be applied to final decisions of the Commissioner rendered before the ruling was issued.[4]  The court therefore addresses the issue *sua sponte*.  The Sixth Circuit has not yet addressed this issue of retroactivity.  See Dooley v. Comm'r of Soc. Sec., No. 16-5146, 2016 WL 4046777, at *5 n.1 (6th Cir. July 28, 2016) ("[W]e need not reach the issue of whether this ruling applies retroactively.").  Other Courts of Appeals have cited to SSR 16-3p without expressly discussing the issue of retroactivity.  See, e.g., Cole v. Colvin, 831 F.3d 411, 415 (7th Cir. 2016); Paulsen v. Colvin, No. 15-1277, 2016 WL 6440368, at *1 (10th Cir. Nov. 1, 2016); Webber v. Colvin, No. 14-35312, 2016 WL 6247126, at *3 (9th Cir. Oct. 26, 2016); Paulek v. Colvin, No. 16-1007, 2016 WL 5723860, at *4 (10th Cir. Oct. 3, 2016); Shuttles v. Colvin, No. 15-3803, 2016 WL 3573468, at *1 (2d Cir. June 30, 2016); Snyder v. Colvin, No. 15-3502, 2016 WL 3570107, at *2 (2d Cir. June 30, 2016).

---

[4] 42 U.S.C. §405(g) allows for judicial review of "any final decision of the Commissioner of Social Security."

Multiple district courts within the Sixth Circuit have held that SSR 16-3p should not be applied to final decisions of the Commissioner made before the ruling went into effect.  For example, in Cameron v. Colvin, No. 1:15-CV-169, 2016 WL 4094884 (E.D. Tenn. Aug. 2, 2016), the court held that:

> It is well-established that, absent explicit language to the contrary, administrative rules do not apply retroactively.  See, e.g., Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541–42 (6th Cir. 2007) ("We are not aware of any constitutional or statutory requirement that the Administration apply its [newly effective] policy interpretation rulings to appeals then-pending in federal courts, absent, of course, ex post facto or due process concerns not present here."); Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations."). Because the text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively, the Court declines to do so.

Id. at *2; see Davis v. Astrue, No. 1:13-CV-1264-CGC, 2016 WL 5957616, at *6 n.2 (W.D. Tenn. Oct. 14, 2016) (concluding the same and collecting cases from district courts within the Sixth Circuit); see also Strode v. Colvin, No. 3:12-0378, 2016 WL 3580832, at *7 n.3 (M.D. Tenn. June 28, 2016) ("SSR 96-7p has been superseded by SSR 16-3p, which became effective on March 28, 2016. Plaintiff's complaint was filed in April of 2012, however, and thus SSR 96-7p applies to the Court's analysis of this claim.").

Several district courts in other circuits, on the other hand, have held that because SSR 16-3p *clarifies* rather than *changes* the

SSA's regulatory policy as to symptom evaluation, it should be applied to prior decisions of the Commissioner. See Qualls v. Colvin, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016); see also Mesecher v. Colvin, No. 6:14-CV-01578-JE, 2016 WL 6666800, at *4-5 (D. Or. Nov. 10, 2016); Holbert v. Colvin, No. 2:15-CV-11550, 2016 WL 4939114, at *13 (S.D. W. Va. June 9, 2016), report and recommendation adopted, No. 2:15-CV-11550, 2016 WL 4942026 (S.D.W. Va. Sept. 15, 2016); Skirnick v. Colvin, No. 3:15-CV-239-JEM, 2016 WL 4709058, at *7 n.1 (N.D. Ind. Sept. 9, 2016). The courts favoring application of SSR 16-3p to previously rendered decisions of the Commissioner have relied largely on Pope v. Shalala, 998 F.2d 473, 482-85 (7th Cir. 1993), overruled on other grounds by Johnson v. Apfel, 189 F.3d 561 (7th Cir. 1999). In Pope, the Seventh Circuit held that although retroactivity is disfavored in the law, retrospective application of a Social Security rule that clarifies rather than changes existing law "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand." Pope, 998 F.2d at 483 (quoting Manhattan General Equip. Co. v. Commissioner, 297 U.S. 129, 135 (1936)); see also Crow Tribal Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev., 781 F.3d 1095, 1101 (9th Cir. 2015); Beller v. Health & Hosp. Corp. of Marion Cnty., Indiana, 703 F.3d 388, 391 (7th Cir. 2012); Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 506 (3d Cir. 2008); Brown v. Thompson, 374 F.3d 253, 258-59 (4th Cir. 2004); Heimmermann v.

First Union Mortg. Corp., 305 F.3d 1257, 1260 (11th Cir. 2002); Orr v. Hawk, 156 F.3d 651, 654 (6th Cir. 1998).  But see Princess Cruises, Inc. v. United States, 397 F.3d 1358, 1363 (Fed. Cir. 2005) (finding the "binary" distinction between rules that clarify rather than change the law "largely unhelpful").

The court finds that SSR 16-3p simply clarifies the SSA's process for evaluating symptoms, and thus its application in appeals of final decisions of the Commissioner rendered before the ruling was issued does not result in the type of retroactivity disfavored by cases such as Bowen.  This finding is supported by the textually stated purpose of SSR 16-3p: "to clarify that subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2016 WL 1119029, at *1.  The SSA issued SSR 16-3p in part on the recommendation of a report it commissioned from the Administrative Conference of the United States, which stated:

> Some commentators have raised serious concerns regarding the potential for bias in the evaluation of a claimant's credibility, including in cases where an ALJ fails to develop the record . . . or relies on extraneous information in decisionmaking . . . . We are concerned that the current description of subjective symptom evaluation, though not wrong, may invite adjudicators to examine a claimant's character or inquire into other matters that are not essential – and indeed are irrelevant – to the evidentiary determination of whether the nature, intensity, frequency, or severity of those symptoms impacts the claimant's ability to work.

Administrative Conference of the United States, Evaluating Subjective Symptoms in Disability Claims, 53 (2015),

https://www.acus.gov/publication/evaluating-subjective-symptoms-disability-claims. While the stated purpose of the ruling and the language in the Administrative Conference report are not controlling, they support the court's finding that the rule is a clarification of the SSA's existing regulatory policy. See Pope, 998 F.2d at 483.

SSR 16-3p is consistent with both SSR 96-7p and the SSA's regulations as to symptom evaluation. SSR 96-7p instructed the ALJ to "make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7P, 1996 WL 374186, at *2.[5] It required the ALJ to give specific reasons for the weight given to the individual's statements, and prohibited the ALJ from making a conclusory statement that the individual's statements were considered and found not entirely credible. Id. at *4. Also, "the findings on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility." Id. Nothing in the text of SSR 96-7p suggests that the ALJ should consider an individual's character for truthfulness in evaluating her statements about her symptoms. See Cole, 831 F.3d at 412 ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching

---

[5]Credibility was defined as the extent to which the individual's statements about her pain and other symptoms "can be believed and accepted as true." Id. at *4.

claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants.").

SSR 16-3p clarifies that 20 C.F.R. §§ 404.1529 and 416.929 require the ALJ to evaluate an individual's statements about the intensity, persistence, and limiting effect of her symptoms in relation to all the evidence, and that the individual's symptoms be determined to diminish her capacity for basic work to the extent that her "alleged functional limitations and restrictions due to symptoms . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4).  The regulations do not use the term credibility, and SSR 16-3p and SSR 96-7p instruct the ALJ to consider the same factors, enumerated in §§ 404.1529 and 416.929, in determining the extent to which an individual's statements about the effects of her symptoms are consistent or inconsistent with the evidence in the record.  Because SSR 16-3p does not change the law governing symptom evaluation, the court applies it to Patterson's appeal of the ALJ's decision.

The ALJ found that "[Patterson's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [Patterson's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (R. 23.)    More

specifically, the ALJ concluded that "[w]hile the allegations regarding the nature of these symptoms are found to be supported within the medical and other evidence of record, the contentions regarding the severity of, and the related functional restrictions, are not supported." (R. 26-27.)

The court disagrees with Patterson's contention that the ALJ violated the regulations and SSR 16-3p by making a single conclusory statement that the ALJ considered Patterson's statements about her symptoms. On the contrary, the ALJ discussed Patterson's allegations about the nature and severity of her symptoms at length. While the ALJ found that the record evidence supports the nature of Patterson's symptoms, the ALJ also found Patterson's allegations about the severity of the symptoms inconsistent with the record. For example, in assessing Patterson's allegation of severe back pain, the ALJ noted that her pain had been stabilized by aqua therapy, that x-rays and an MRI of her lumbar spine showed no abnormalities, and that her treatment notes from the Medina Clinic indicated that she ambulated without difficulty. He also noted that Patterson, despite having insurance, has never had back surgery or sought treatment from an orthopedic specialist. Also, the ALJ reasonably considered Dr. McBride's examination finding that Patterson had full range of motion in her cervical and lumbar spine to be inconsistent with Patterson's allegations about the severity and limiting effects of her back pain.

As in her argument challenging the weight given to Dr.

Stewart's opinion, Patterson claims the ALJ mischaracterized or took out of context Patterson's statements about her daily activities in evaluating whether Patterson's symptoms are consistent with the evidence in the record. However, as the court previously concluded, the ALJ's characterization of Patterson's activities as including caring for three children independently, driving, cooking, cleaning and caring for personal needs" is not unreasonable based on the evidence in the record. (R. 23.) Patterson's daily activities considered alongside the objective medical evidence and opinion evidence substantially support the ALJ's determination that Patterson's statements about the severity of her symptoms are inconsistent with the record evidence.

**E.   The Lack of an Explicit Function-by-Function Assessment in the ALJ's RFC Determination Does Not Require Remand**

Patterson also claims that in determining Patterson's RFC, the ALJ failed to perform a function-by function assessment as required by SSR 96-8p. A claimant's RFC is "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The ALJ must assess the claimant's RFC based on all of the relevant evidence in the record. §§ 404.1545(a)(3) & 416.945(a)(3); see also SSR 96-8P, 1996 WL 374184, at *3 (July 2, 1996) ("The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."). The SSA requires the ALJ to address a claimant's exertional and nonexertional capacities. SSR

96-8p, 1996 WL 374184, at \*5.  In addressing a claimant's exertional capacity, the ALJ must separately consider the claimant's abilities to perform each of seven strength demands: "sitting, standing, walking, lifting, carrying, pushing, and pulling."  Id.  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  Id. at 7.

In her opinion, the ALJ found that Patterson "has the [RFC] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the claimant can frequently sit, stand and walk with regular breaks and occasionally reach, stoop, kneel, and climb stairs."  (R. 18-19.)  As Patterson points out, the ALJ's opinion does not separately discuss Patterson's ability to perform each of the seven exertional demands listed in SSR 96-8p.  A majority of the courts of appeals, however, have determined that an ALJ's failure to include an explicit function-by-function analysis is not a *per se* reason to remand.  In Delgado v. Comm'r of Soc. Sec., the Sixth Circuit reasoned that "[a]lthough SSR 96-8p requires a function-by-function evaluation to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged."  Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547 (6th Cir. 2002) (citing Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (table), No. 00–1995 (3d Cir. Dec. 19, 2000)

(unpublished opinion)). Further quoting the Benecivengo decision, the Sixth Circuit also stated, in dicta, that

> [a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing . . . . The ALJ need not decide or discuss uncontested issues . . . the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities and explain the resolution of any inconsistencies in the record."

30 F. App'x at 547-48. The Second Circuit has likewise held that:

> [w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed.

Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016) ("We have not adopted a rule of per se reversal for errors in expressing the RFC before analyzing the claimant's limitation function by function. However, we have held that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.") (internal citation omitted) (internal quotation marks omitted); Kelley v. Colvin, 650 F. App'x 482, 483 (9th Cir. 2016) ("The ALJ did not express Kelley's RFC on a function-by-function basis, but the ALJ is not required to do so where she relies on

medical opinions that define the relevant functional limitations."); Zatz v. Astrue, 346 F. App'x 107, 111 (7th Cir. 2009) ("A function-by-function assessment of an individual's limitations ensures that the ALJ does not overlook an important restriction and thereby incorrectly classify the individual's capacity for work. But an ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence.").

The ALJ provided a detailed narrative discussion of her conclusions based on the evidence in the record. While the ALJ did not explicitly articulate Patterson's ability to perform each of the seven exertional activities, her opinion discussed her findings as to Patterson's physical limitations in light of Patterson's statements about her symptoms, daily activities, and the objective medical evidence. Moreover, the ALJ explicitly discussed and weighed three medical opinions - those of Dr. McBride, Dr. Stewart, and nonexamining state consultant Dr. Karla Montague-Brown – which assessed Patterson's limitations with regard to the exertional strength demands.[6] Finally, Patterson does not make any specific arguments about how the ALJ's failure to explicitly discuss any of

---

[6]In her opinion, Dr. Montague-Brown assigned Patterson even fewer physical limitations than Dr. McBride. The ALJ "assign[ed] some weight to this opinion; however, considering the evidence in the light most favorable to [Patterson], the [ALJ] put [Patterson] at a limited range of light work." (R. 26.) The ALJ also gave more weight to Dr. McBride's opinion because Dr. McBride, unlike Dr. Montague-Brown, examined Patterson.

the individual exertional activities adversely affected the determination of her RFC.  Accordingly, to the extent that the ALJ erred by failing to provide a function-by-function assessment in accordance with SSR 96-8p, that failure does not require remand.

Patterson also argues that the ALJ erred by failing to include additional limitations in Patterson's RFC based on her IBS and diarrhea.  The ALJ found Patterson's IBS to be a severe impairment at step two, and considered it in the RFC analysis.  The ALJ noted Patterson's hearing testimony that her IBS and incontinence "comes and goes . . . about once every two months or once every three months."  (R. 48-49.)  The ALJ also considered that Patterson's medical records do not show weight loss due to diarrhea, and at the hearing Patterson indicated she considered fibromyalgia and back pain to be her worst health conditions.  (R. 41.)  Moreover, although the ALJ did not discuss it, the court also notes that Dr. Stewart's opinion, which Patterson relies upon in support of her claim of disability, did not reference Patterson's IBS or diarrhea.  Accordingly, the ALJ's decision not to include further limitations in Patterson's RFC on account of her IBS and diarrhea is reasonable and supported by substantial evidence.

## F.   The ALJ Properly Considered Patterson's Obesity

Patterson also argues that the ALJ erred by not properly considering her obesity.  Although the SSA deleted obesity from the listing of impairments in 20 C.F.R., subpart P, appendix 1, it remains a medically determinable impairment, and the ALJ must

"consider its effect when evaluating disability." SSR 02-01p, 2002 WL 34686281 (September 12, 2002). The "combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately," and the ALJ must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." Id.

The ALJ properly considered Patterson's obesity in the disability analysis. "'Social Security Ruling 02-01p does not mandate a particular mode of analysis,' but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 577 (6th Cir. 2009) (citing Bledsoe v. Barnhart, 165 F. App'x 408, 411-12 (6th Cir. 2006)). The ALJ found Patterson's obesity to be a severe impairment at step two. At step three, the ALJ stated that "Listings 1.00, 3.00, and 4.00 were considered in determining whether the claimant's history of obesity caused any significant impairments that would meet one or more of these listings" but found that "[Patterson's] obesity, whether analyzed individually or in combination with another impairment, does not meet or medically equal any listing." (R. 16.) In her RFC analysis, the ALJ explicitly referenced Patterson's height, weight, and Body Mass Index, and stated that "due to the combination of [Patterson's] obesity related

impairments, the undersigned has limited [Patterson] to a reduced range of light work."  (R. 21.)

The ALJ also gave great weight to the opinion of consultative examiner Dr. Gary McBride, who specifically noted in his medical assessment that Patterson was morbidly obese, and that her obesity "did adversely affect the ability to walk, twist, turn, bend, and lift." See Coldiron, 391 F. App'x at 443 ("[W]hen assigning Coldiron an RFC, the ALJ considered RFCs from physicians who explicitly accounted for Coldiron's obesity.").  The ALJ considered Patterson's obesity at every step of her analysis, and thus complied with SSR 02-01p.  Compare id. at 442-43 with Barker v. Comm'r of Soc. Sec., No. 1:15-CV-262-SKL, 2016 WL 3448583, at *5 (E.D. Tenn. June 17, 2016) ("[T]he ALJ did not mention Plaintiff's obesity in his discussion of the medical evidence, in his RFC determination, or anywhere else in his decision . . . . This omission by the ALJ renders it impossible to tell if he properly considered plaintiff's obesity.").

I.  **The ALJ Properly Considered Patterson's Use of a Cane**

Patterson's final argument is that the ALJ erred by failing to properly consider Patterson's use of a cane in determining that Patterson has the RFC to perform light work.  The ALJ noted Patterson's hearing testimony that she uses a cane, and that "the medical records contain documentation that [Patterson] uses a cane."  However, the ALJ found that "the imaging tests of [Patterson's] lumbar and thoracic spine and other clinical findings

indicate that she is able to ambulate effectively without the use of a cane." (R. 21.) This determination is supported by substantial evidence.

In his exam notes, Dr. McBride stated that "[Patterson] did not use an ambulatory device at exam today, but she said she had a cane, which was not medically necessary." (R. 381.) Moreover, Patterson's treatment notes from the Medina family clinic, which included twelve visits between August 2011 and March 2012, note that she "ambulates without difficulty," and do not mention the use of a cane. (R. 642, 645, 648, 651, 654, 657, 660, 663, 666, 669, 672, 676.) While Patterson's use of a cane is noted by Dr. Stewart in an application for a Disabled Person License Plate and in her medical records from Family Healthcare of Jackson, those records do not indicate that Patterson's use of the cane is medically necessary. See SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."). Additionally, in his August 6, 2012 medical opinion, Dr. Stewart responded "NA" to the prompt "[s]tate any other work-related activities which are affected by the impairment such as need for assistive device for ambulation." (R. 768.) The ALJ properly considered the ALJ's use of a cane.

### III. RECOMMENDATION

For the reasons described above, the Commissioner's decision that Patterson is not disabled within the meaning of 42 U.S.C. § 423(d) because she has the RFC to perform light work is supported by substantial evidence. Accordingly, it is recommended that the decision of the Commissioner be affirmed.

Respectfully submitted,


s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

December 16, 2016
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**